## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| MARC ELLMAN, MD., P.A., D/B/A/ | § | |
| SOUTHWEST EYE INSTITUTE AND | § | |
| VISTA SURGERY CENTER, LLC | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | **EP-21-CV-290-DB** |
| | § | |
| MDOFFICE LLC, EYE CARE | § | |
| LEADERS HOLDINGS, LLC AND ELI | § | |
| GLOBAL, LLC, | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER ON DEFENDANTS MDOFFICE, LLC, EYE CARE LEADERS HOLDINGS, LLC, AND ELI GLOBAL, LLC'S MOTION TO DISMISS

On this day, the Court considered Defendants MDOffice, LLC, Eye Care Leaders

Holdings, LLC and Eli Global, LLC's (collectively, "Defendants") "Motion to Dismiss for

Failure to State a Claim" ("Motion to Dismiss"), filed in the above-captioned case on January 19,

2022. ECF No. 12. Defendants ask the Court to dismiss Plaintiffs Southwest Eye Institute

and Vista Surgery Center's (collectively, "Plaintiffs") Amended Complaint, filed on January 6,

2022. Compl., ECF No. 10. Plaintiffs subsequently filed a Response, ECF No. 16.

Defendants filed a Reply, ECF No. 19, and Plaintiffs filed a Surreply, ECF No. 20.

## BACKGROUND

Before the Court is a contract dispute originally brought in state court and

removed to this Court pursuant to the Court's diversity jurisdiction. Not. of Removal 3, ECF

No. 1. Plaintiffs are an eye institute and a surgery center. Compl. 1, ECF No. 10.

Defendants are companies that provide services related to medical practice management,

including billing for medical procedures and processing health insurance claims. *Id.* at 4.

Plaintiffs raise claims of breach of contract and breach of express warranty against Defendants, arguing that Defendants failed to provide promised billing and insurance processing services. *Id.* at 3–5.   These broken promises allegedly caused over ten million dollars of damage.   *Id.* at 7.   The differences between the three companies' roles are unclear, and each of the three is alleged to have carried out the duties of the contracts at certain points.   *Id.* at 4.

**1.  The Agreements**

Plaintiffs' complaint is at times poorly worded and difficult to follow.   *See* Compl., ECF No. 10.   Plaintiffs claim that in May 2016 they each entered into an agreement with MDOffice.   *Id.* at 3.   In those agreements, MDOffice promised to provide a "revenue cycle service"—which involves electronic medical record keeping and practice management— for the Plaintiffs' eye care and surgical businesses.   *Id.*   In exchange, the eye institute would pay MDOffice three percent of its net collections for medical and surgical services and one percent of net collections for lens and other elective procedures.   *Id.* at 5.   The surgical center also promised to pay MDOffice three percent of its net collections for medical and surgical services as well as facility billing.   *Id.*

Plaintiffs state that before entering into the agreements, they told Defendants that they were seeking a qualified company to provide a software that would assist them in managing their medical practices, as well as provide medical record-keeping and billing and collection services for Plaintiffs' eye care and surgical businesses.   *Id.* at 4.   "Defendants represented that it was well qualified to provide [those] software and billing services."   *Id.*

Plaintiffs claim that Defendants then breached the agreement.   *Id.* at 6.   During the term specified in the agreement "Defendants did not effectively manage and run" their claims processing services.   *Id.*   They did not "properly assign account supervision, perform billing,

2

send [claims] to insurance, receive money back, record, and perform follow ups."  *Id.*   They also "failed to . . . [comply] with 'Denial Analysis [and] Handling,' [by] not responding to denials in a timely fashion [which] caused claims to be written off for timely filing rather than payment."  *Id.*

Plaintiffs now bring a breach of contract claim and a breach of express warranties claim.  *Id.* at 8–9.[1]   They allege that the Defendants' failure to provide the services as promised resulted in untimely fillings and errors related to submissions of charges, write offs, and adjustments, causing damages in excess of ten million dollars.

### 2.  The Parties

Plaintiffs allege that all three defendants were responsible for the agreements in some fashion.  *Id.* at 3–4.   The agreements were signed by MDOffice, but a series of acquisitions and representations by the Defendants quickly made it unclear to Plaintiffs who was responsible for performing the contractual duties.  *Id.* at 4.   "At or near the time the Agreements were entered into, Plaintiffs were advised that MDOffice was acquired by an affiliate of Eli Global.   Plaintiffs were later advised that entity was Eye Care Leaders ("ECL"). Defendants represented that . . . Eli Global and Eye Care Leaders were guaranteeing and assuming the obligations of MDOffice under the Agreements."  *Id.*   Once the agreements were executed, all three parties communicated with Plaintiffs and performed the obligations and duties of the agreements.  *Id.*

The Defendants argue that all allegations against Defendants ECL and Eli Global should be dismissed since Plaintiffs did not "sufficiently allege the existence of a specific assignment, assumption, or guaranty agreement purportedly entered into by [either party]."

---

[1] Plaintiffs also brought two other claims, but they have been voluntarily dismissed.   Resp. 3, ECF No. 16.

Mot. to Dismiss 3, ECF No. 12.   Defendants also argue that plaintiffs did not allege that Eli
Global or ECL breached the Agreements.   *Id.* at 4.   Lastly, Defendants complain that the
Plaintiffs engage in impermissible "group pleading" or "shotgun pleading."   *Id.* at 4–5, ECF
No. 12; Reply 3, ECF No. 19.

With respect to Plaintiffs' breach of express warranty claim, Defendants argue
that Plaintiffs did not properly plead the claim, and merely regurgitated their breach of contract
claim.   Mot. to Dismiss 6–7, ECF No. 12.   Specifically, Defendants argue that "Plaintiffs do
not allege any express warranties regarding the quality or characteristics of the services
themselves; rather, they simply allege that Defendants promised to provide the services."   *Id.* at
7.

## LEGAL STANDARD

Rule 12(b)(6) permits dismissal if a party fails "to state a claim upon which relief
can be granted."   Fed. R. Civ. P. 12(b)(6). When deciding a Rule 12(b)(6) motion, the court
accepts all well-pleaded facts as true, viewing them in the light most favorable to the non-
movant.   *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).   Rule
12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a) ("Rule 8(a)"),
which requires "a short and plain statement of the claim showing that the pleader is entitled to
relief."   Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64 (2009); *Bell Atlantic
Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   A complaint must be "plausible on its face" to
survive a Rule 12(b)(6) motion.   *Twombly*, 550 U.S. at 570.   Thus, the complainant must plead

"factual content that allows the court to draw the reasonable inference that the [other side] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The Supreme Court has set out a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. *Id.* at 680–81. First, the Court identifies conclusory allegations and disregards them, for they are "not entitled to the assumption of truth." *Id.* Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663–64.

"Under the Supreme Court's decision in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), federal courts hearing state-law claims apply state substantive law and federal procedural law." *Lamar Co., L.L.C. v. Mississippi Transp. Comm'n*, 786 F. App'x 457, 460 (5th Cir. 2019). Thus, when conducting a Rule 12(b)(6) analysis while sitting in diversity, a court applies Texas state substantive law to the question of whether a party's factual allegations "plausibly suggest an entitlement to relief." *Iqbal*, 556 U.S. at 681; Fed. R. Civ. P. 12(b)(6).

## ANALYSIS

The Court first examines Defendants' argument that the claims against ECL and Eli Global should be dismissed due to impermissible group pleading or "shotgun pleading." *See* Mot. to Dismiss 4–5, ECF No. 12; Reply 3, ECF No. 19. The Court then discusses whether Plaintiffs have pled their breach of contract and breach of express warranties claims in a manner

that allows the Court to draw the reasonable inference that the Defendants are liable for the

breaches.   *See Iqbal*, 556 U.S. at 678.

### 1. Plaintiffs Have Not Engaged in Impermissible Group Pleading or "Shotgun" Pleading.

    In their Motion to Dismiss, Defendants use the terms "group pleading" and

"shotgun pleading" interchangeably to allude to pleadings that do not distinguish between the

relevant conduct of each defendant.   Reply 3, ECF No. 19.   To support the proposition that

Plaintiffs have engaged in impermissible group pleading, the only binding precedent Defendants

cite consists of a plethora of cases which apply the heightened pleading standards of Federal

Rule of Civil Procedure 9(b).   *Id.* (citing multiple cases, including *Southland Sec. Corp. v.*

*INSpire Ins. Sols., Inc.*, 365 F.3d 353, 385 (5th Cir. 2004); *see also* Fed. R. Civ. P. 9(b).   Those

cases are not relevant to the present case since Rule 9(b)'s heightened pleading standard only

applies when a plaintiff is alleging fraud or mistake.   Fed. R. Civ. P. 9(b).

    Although Rule 9's heightened pleading standard does not apply, courts still

generally hold pleadings to a certain standard and can dismiss cases whose pleadings lump

defendants together in a way that makes it difficult to discern "which defendant [is] being

charged with which specific conduct."   *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir.

2021).   The Fifth Circuit disapproves of shotgun pleadings, noting that the "'shotgun approach'

to pleadings, . . . where the pleader heedlessly throws a little bit of everything into his complaint

in the hopes that something will stick, is to be discouraged."   *S. Leasing Partners, Ltd. v.*

*McMullan*, 801 F.2d 783, 788 (5th Cir. 1986) (quoting *Rodgers v. Lincoln Towing Serv., Inc.*,

596 F.Supp. 13, 27 (N.D. Ill. 1984)).   Defendants argue that "one characteristic of improper

'shotgun' pleadings is that a complaint attributes 'discrete actions . . . to all or multiple

defendants without explaining the basis for such grouping or distinguishing between the relevant

conduct of the named Defendants." Reply 3, ECF No. 19; *Lakeway Regional Med. Ctr., LLC*, No. A-19-CV-945-JRN, 2020 WL 6146571 at *2 (W.D. Tex. Feb. 13, 2020).

Plaintiffs' Complaint is not a shotgun pleading. It does not rattle off irrelevant or unrelated facts "in the hopes that something will stick." *S. Leasing Partners, Ltd.*, 801 F.2d at 788. Furthermore, contrary to what Defendants argue, Plaintiffs have explained the basis for grouping the Defendants together when discussing their conduct with respect to the agreements. Compl. 4, ECF No. 10; *see Lakeway Regional Med. Ctr., LLC*, 2020 WL 6146571 at *2. For instance, Plaintiffs allege that "although the initial agreements were with MDOffice, it was subsequently acquired by ECL. Plaintiff is under information and belief that MDOffice and ECL are now part of and/or backed by Eli Global, LLC." Compl. 3, ECF No. 10. Plaintiffs further allege that "[D]efendants represented that . . . Eli Global and Eye Care Leaders were guaranteeing and assuming the obligations of MDOffice under the Agreements" and that Eli Global and ECL did perform the obligations and duties that MDOffice had agreed to. *Id.* Plaintiffs state that "much of [their] correspondence and dealings after execution of the Agreements was with all Defendants." *Id.* at 8.

At this stage of litigation, before any discovery has been conducted, Plaintiffs cannot be expected to know the exact nature of the connections between the Defendants, and they do not need to know it in order to meet the pleading standard. Importantly, the federal pleading standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (internal quotations omitted). Plaintiffs' do not make conclusory or nonspecific claims against a group of unrelated companies; they make specific claims against a group of linked entities. Given the limited knowledge that Plaintiffs have at this point, the

7

Complaint contains as much specificity as possible and contains "enough fact to raise a

reasonable expectation that discovery will reveal evidence" of the claimed breaches.   *Morgan v.

Hubert*, 335 F. App'x at 470.

      The Court will therefore allow the claims against Eli Global and ECL to proceed.

## 2. Plaintiffs' Complaint Contains Sufficient Factual Allegations to Support a Breach of Contract Claim.

      According to Defendants, "a plaintiff must [] identify the material provisions of

the contract, which may be done by attaching the contract to the complaint (where possible) or

by describing the terms of the contract in the text of the complaint itself."   *TEU Servs., Inc. v.*

*Inventronics USA, Inc.*, No. SA-16-CV-01023-RCL, 2018 WL 3338217, at *6 (W.D. Tex. Feb.

5, 2018); Mot. to Dismiss 4, ECF No. 12.   Defendants claim that Plaintiffs' breach of contract

claim should be dismissed because it "fail[s] to allege the existence of [an agreement], much less

sufficiently plead the material terms therein."   Mot. to Dismiss 4, ECF No. 12.

      Because the Court has diversity jurisdiction over this case, it will look to Texas

state substantive law for the elements of a breach of contract claim.   *Lamar Co., L.L.C.*, 786 F.

App'x at 460.   A breach of contract claim requires four elements be proven: (1) a valid contract

existed between the plaintiffs and the defendants; (2) the plaintiffs tendered performance or were

excused from doing so; (3) the defendants breached the terms of the contract; and (4) the

plaintiffs sustained damages as a result of the defendants' breach.   *Pathfinder Oil & Gas, Inc. v.*

*Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019).

      The Court applies that state substantive law to the federal pleading standard.

The Court must "accept all well-pleaded facts as true, viewing them in the light most favorable

to" the Plaintiff.   *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007).

Here, the Plaintiffs have pled the terms of both contracts in the text of the

complaint itself:

| Agreement Between Southwest Eye Institute (SWEI) and Defendants | |
|---|---|
| Defendants promised the following services:<br>• Electronic Insurance Eligibility Verification<br>• Surgery Pre-authorization Service<br>• Claims Submission<br>• Electronic Remittance and Payments Posting<br>• Denial Analysis & Handling<br>• Accounts Receivable Follow-Up (Up to 90 Days)<br>• Detailed Reporting<br>• FREE use of MDOffice PM and EMR System (Including eRx and EDI) | SWEI promised:<br>• 3.0% of net collections*, for medical and surgical services, plus taxes<br>• 1% of net collection Premium Lens and other Elective Procedures billed as Cash and collected at the office by client<br><br><br>*"Collections are defined as 'all net monthly collections' i.e., capitation payment, co-pay, patient payments, private or public insurance payments collected including surgeries." |

| Agreement Between Vista Surgery Center (Vista) and Defendants | |
|---|---|
| Defendants promised the following services:<br>• Surgery Authorization<br>• Claims Submission<br>• Electronic Remittance and Payments Posting<br>• Denial Analysis & Handling<br>• Accounts Receivable Follow-Up (Up to 90 Days)<br>• Detailed Reporting<br>• FREE use of MDOffice PM and EMR System (Including eRx and EDI) | Vista promised:<br>• 3.0% of net collections*, for medical and surgical services, plus taxes. Facility Billing (2 Ors).<br><br><br>*"Collections are defined as 'all net monthly collections' i.e., capitation payment, co-pay, patient payments, private or public insurance payments collected including surgeries." |

Compl. 5, ECF No. 10.

The Plaintiffs have pled that they performed under the contract. "In accordance

with the agreement . . . Defendants collected the amounts submitted to Plaintiffs for services

Defendants claimed had been provided." Resp. 12, ECF No. 16. The Plaintiffs also plead the

specific ways the Defendants breached the contracts. Namely by "not responding to denials in

a timely fashion" causing "claims to be written off for [un]timely filing," "not [following] up

with accounts receivable, and providing inaccurate reporting." Compl. 6, ECF No. 10. In

9

addition, Plaintiffs allege that the defendants "did not effectively manage and run revenue cycle services, including, but not limited to, to properly assign account supervision, perform billing, send to insurance, receive money back, record, and perform follow ups."   *Id.*   With respect to the SWEI agreement, MDOffice breached the agreement by over-charging for premium lens and other elective procedures.   *Id.*

Lastly, Plaintiffs allege that they were materially harmed by the Defendants' breach to the tune of $10,397,337.77.   *Id.* at 7.   "The damages arise from Defendants' failures related to timely filings and submissions of charges, write offs, and adjustments."   *Id.*

While the federal pleading standard does not require Plaintiffs to plead each element of a claim in detail to survive a motion to dismiss, Plaintiffs have pled every element. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 511–12 (2002) (holding that the prima facie case is an evidentiary standard, and not a pleading requirement).   Furthermore, Plaintiff's pleadings are non-conclusory and sufficiently detailed to show that Defendants may be liable for breaching the contracts at hand.   *See Iqbal*, 556 U.S. at 678.   The complaint sets out the specific contract terms and the specific ways the Defendants allegedly breached the contract.   Compl. 5–6, ECF No. 10.

Since the Complaint as pleaded by Plaintiffs suggests that Plaintiffs are plausibly entitled to relief for breach of contract, the Court will not dismiss the claim.

### 3. Plaintiffs' Complaint Contains Sufficient Factual Allegations to Support Its Breach of Express Warranties Claim Against MDOffice and Eli Global.

Defendants allege that this Court should dismiss Plaintiffs' breach of express warranties claim because "it is nothing more than a claim for breach of contract."   Mot. to

Dismiss 6, ECF No. 12. According to the Defendants "Plaintiffs do not allege any express

warranties regarding the quality or characteristics of the services themselves." *Id.* at 7.

Because the Court has diversity jurisdiction over this case, it will look to Texas

state substantive law for the elements of a breach of express warranties claim. *Lamar Co.,*

*L.L.C.*, 786 F. App'x at 460.

If "[a] contract term identifies what is being sold[,] warranties describe the

attributes, suitability for a particular purpose, and ownership of what is sold." *Chilton Ins. Co.*

*v. Pate & Pate Enters., Inc.*, 930 S.W.2d 877, 891 (Tex. App. 1996), *writ denied* (Feb. 13, 1998).

To create an express warranty "there must be a representation or affirmation as to the character,

quality, or title of the goods or services." *Staton Holdings, Inc. v. Tatum, L.L.C.*, No. 05-12-

01408-CV, 2014 WL 2583668, at \*2 (Tex. App. June 10, 2014).

"The elements of a claim for breach of warranty for services are (1) the defendant

sold services to the plaintiff; (2) the defendant made a representation to the plaintiff about the

characteristics of the services by affirmation of fact, by promise, or by description; (3) the

representation became part of the basis of the bargain; (4) the defendant breached the warranty;

(5) the plaintiff notified the defendant of the breach; and (6) the plaintiff suffered injury."

*Paragon Gen. Contractors, Inc. v. Larco Const., Inc.*, 227 S.W.3d 876, 886 (Tex. App.—Dallas

2007, no pet.).

Plaintiffs have pled that Defendants made representations about the quality of the

services they would provide. Prior to executing the agreements, "MDOffice represented to

Plaintiffs that it was well qualified to provide the services . . . it would provide reporting that was

detailed, . . . it would report and process claims in a timely manner, . . . [and] it would provide

software capable of performing revenue cycle services." Resp. 15, ECF No. 16. In addition,

11

Plaintiffs have pled that they relied on the representations of the Defendants when entering into the contracts.   Compl. 4, ECF No. 10.   Plaintiffs have also pled that Defendants breached the alleged warranty.   "[C]laims were not processed in a timely manner, they failed to provide detailed reporting, . . . [and] the software provided was inadequate to allow for revenue cycle services."   Resp. 15, ECF No. 16.   Further, Plaintiffs notified Defendants that the quality of services they were promised was not being delivered.   "Plaintiffs notified Defendants by contacting an agent and employee of the Defendants and informed him services were billed and not provided in an attempt to amicably resolve the issue."   *Id.*

Plaintiffs' factual allegations are sufficiently detailed to show that Defendants may be liable for a breach of express warranty.   *See Iqbal*, 556 U.S. at 678.   Contrary to what Defendants argue, the Complaint alleges that promises were made about the quality of the services, and not just what the services were.   Resp. 15, ECF No. 16.   Specifically, the reporting was to be "detailed," claims were to be processed in a "timely manner," and the software provided was to be "capable of performing revenue cycle services."   *Id.*   These terms are descriptors of the quality of the services, which allow the Court to draw the inference that the Defendants may have promised that the services would meet a certain standard.   *See Staton Holdings, Inc.*, 2014 WL 2583668 at *2 (finding that an agreement that merely lists the services to be performed and does not state that the services will be performed to a certain standard does not amount to an express warranty).   Thus, the complaint contains "enough facts to state a claim to relief that is plausible on its face."   *Twombly*, 550 U.S. at 570.

The Court will not dismiss the claim.

## CONCLUSION

Plaintiffs' breach of contract and breach of express warranties claims are

sufficiently detailed to show that Plaintiffs may be entitled to relief as to all Defendants.
Plaintiffs have met the federal pleading standard by providing factual allegations about the
elements of each claim.   Thus, this Court will not dismiss the case at this time.

Accordingly, **IT IS HEREBY ORDERED** that Defendants MDOffice, LLC, Eye
Care Leaders Holdings, LLC and Eli Global, LLC's "Motion to Dismiss for Failure to State a
Claim," ECF No. 12, is **DENIED**.

SIGNED this _3/_ st day of **March 2022**.

**THE HONORABLE DAVID BRIONES**
**SENIOR UNITED STATES DISTRICT JUDGE**